### Remission of Tax Penalties.

*Corporations—Capital stock tax—Corporate loan tax—Penalties—Remission—Auditor General—State Treasurer—Board of Public Accounts—Acts of April 8, 1869, and July 15, 1919.*

1. The penalties provided by the Act of July 15, 1919, P. L. 948, for failure on the part of a corporation to file reports for capital stock and corporate loan taxes within the time prescribed by the act, are mandatory and cannot be remitted by the Auditor General or State Treasurer.

2. Where penalties have been correctly and legally settled against a corporation for failure to file reports for tax purposes within the time prescribed by law, the Board of Public Accounts is without authority under the Act of April 8, 1869, P. L. 19, to reverse the settlements and remit penalties.

Department of Justice. Opinion to F. H. Lehman, Secretary of Board of Public Accounts.

JOHN ROBERT JONES, Dep. Att'y-Gen., April 3, 1923.—Your letter dated Feb. 16, 1923, addressed to the Attorney-General, submitting the request of the Board of Public Accounts for an opinion as to the authority of the said board to remit certain penalties, received.

#### Facts.

May 19, 1920, the Pittsburgh-DesMoines Company, a domestic corporation, filed in the office of the Auditor General its capital stock and corporate loans report for the calendar year ending Dec. 31, 1919. Feb. 27, 1920, the Auditor General granted to the company an extension of time to May 1, 1920, within which to file its reports for the said year of 1919. June 7, 1920, the Auditor General made a settlement of the amount of capital stock tax due the Commonwealth for the year 1919 in the sum of $394.05, consisting of taxes at the rate of 5 mills, $358.23, and penalty for failure to file the report within the time limit provided by law in the sum of $35.82, the same being 10 per centum of the said sum of $358.23. This settlement was approved by the State Treasurer June 9, 1920.

June 7, 1920, the Auditor General made a settlement of the corporate loan tax due the Commonwealth for the year 1919 in the sum of $126, consisting of taxes due at the rate of 4 mills, $120, penalty for failure to file the report within the time limit provided by law, $12, the same being 10 per centum of the said sum of $120, and made an allowance of a deduction of treasurer's commission in the sum of $6. This settlement was approved by the State Treasurer June 9, 1920.

4 D. & C.

Upon receipt of the statement for the said taxes, including the penalties, the company made no contention that the settlements of the tax upon which the said penalties were based were erroneously or illegally made. The company did object to the penalties and requested the Auditor General to remit them. The Auditor General refused to remit the penalties, holding that the time limit within which the reports were to be filed expired May 1, 1920, and the reports nôt having been filed until May 19, 1920, the penalties were properly imposed, their imposition, under the law, being mandatory.

Thereupon the said company petitioned the Board of Public Accounts for a remission of the penalties.

### Questions.

1. Have the Auditor General and the State Treasurer authority to remit penalties imposed as aforesaid?

2. Has the Board of Public Accounts authority to remit penalties imposed as aforesaid?

### Discussion.

The Act of July 15, 1919, P. L. 948, provides that a company such as the present one is . . . "to make annually, on or before the last day of February, for the calendar year next preceding, a report in writing to the Auditor General on a form or forms to be prescribed and furnished by him, stating specifically: . . ."

The said act further provides:

"If the said officers of any such corporation, company, joint stock association or limited partnership shall neglect or refuse to furnish the Auditor General, on or before the last day of February in each and every year, or within sixty days of the end of its fiscal year, as herein provided, with the report as aforesaid, it shall be the duty of the accounting officers of the Commonwealth to add 10 per centum to the tax of said corporation, company, joint stock association or limited partnership for each and every year for which such report was not so furnished, which percentage shall be settled and collected with the State tax in the usual manner of settling accounts and collecting such taxes.

"The Auditor General may, upon application made before the last day of February in each and every year, and upon proper cause shown, extend the time of filing returns for a period not exceeding sixty days from the last day of February of the year for which the same are required to be filed."

Manifestly, the question as to whether or not the Auditor General and the State Treasurer have the authority to remit the penalties imposed in accordance with the said provisions of this act is to be determined by a proper interpretation and construction of the said act of assembly.

In the case of Haddock v. Com., 103 Pa. 243, the Supreme Court said on page 249: "The first and cardinal rule for construction of statutes is, that when the intent of the legislature is plainly expressed, it must prevail; that when the language of a statute is clear and unequivocal, without ambiguity or uncertainty, we are to presume that it expresses the intent of the legislature, and no construction is necessary."

In the case of City of Pittsburgh v. Kalchthaler, 114 Pa. 547, the Supreme Court said on page 552: "We think it is always unsafe to depart from the plain and literal meaning of the words contained in legislative enactments out of deference to some supposed intent, or absence of intent, which would prevent the application of the words actually used to a given subject. Such a practice is really substituting the theories of a court, which may, and often

do, vary with the personality of the individuals who compose it, in place of the express words of the law as enacted by the law-making power. It is a practice to be avoided and not followed. It has been condemned by many text-writers and by many courts. Occasionally it has been departed from, but the path is devious and a dangerous one, which ought never to be trodden except upon considerations of the most convincing character and the gravest moment."

In the case of Com. v. Clairton Steel Co., 229 Pa. 246, the court had before it for construction the Act of July 15, 1897, P. L. 291. The court below whose judgment was affirmed, said on page 249:

"By that act, exemption from taxation on its bonds owned by it in its own right is given to a State bank or savings institution which shall pay into the State Treasury, on or before March 1st in each year, the tax imposed therein upon the shares of its capital stock: Com. v. Clairton Steel Co., 222 Pa. 293. *The language of the proviso granting the exemption as to the time when the stock tax shall be paid is without ambiguity, and, therefore, is not open to construction. The exemption is conditioned upon the payment of the tax on or before March 1st in each year.* . . .

". . . We are not at liberty to disregard the time fixed by the Act of 1897, on or before which the stock tax must be paid in order to obtain exemption, and thus relieve the defendant company from its liability in the present instance."

In line with this reasoning, Deputy Attorney-General Hargest, in an opinion rendered to the Auditor General, under date of April 12, 1916 (Report and Official Opinions of the Attorney-General, 1915-1916, page 143), held that the duty of the Auditor General to impose the penalty for non-payment of taxes by trust companies within forty days from date of settlement is mandatory, and that the Act of June 13, 1907, P. L. 640, gave the Auditor General no discretion to waive the penalty as he might see fit.

I do not think there is any ambiguity in the language of the Act of 1919, relative to the imposition of these penalties and their settlement by the Auditor General and State Treasurer. The direction to the accounting officers of the Commonwealth, contained in said act, is plain and their duty is clear. The language is that ". . . it shall be the duty of the accounting officers of the Commonwealth to add 10 per centum to the tax of said corporation, company, joint stock association or limited partnership for each and every year for which such report was not so furnished, which percentage shall be settled and collected with the State tax in the usual manner of settling accounts and collecting such taxes."

I am, therefore, of the opinion that the Auditor General was correct in holding that the imposition of the said penalties under the said Act of 1919 is mandatory; and that the accounting officers of the Commonwealth are without authority to remit them.

We now come to a consideration of the second question as to whether or not the Board of Public Accounts has the authority to remit these penalties.

The Board of Public Accounts is created by, and its authority and power set forth in, the Act of April 8, 1869, P. L. 19. The act reads as follows: "Be it enacted by the Senate and House of Representatives of the Commonwealth of Pennsylvania in General Assembly met, and it is hereby enacted by the authority of the same, that the Auditor General, State Treasurer and Attorney-General be authorized to revise any settlement made with any person or body politic by the Auditor General, when it may appear from the accounts in his office, or from other information in his possession, that the

4 D. & C.

same has been erroneously or illegally made, and to re-settle the same according to law, and to credit or charge, as the case may be, the amount resulting from such re-settlement upon the current accounts of such person or body politic."

It will be noted that the authority of the Board of Public Accounts to revise any settlement is confined to the situation where it may appear from the accounts in the office of the Auditor General, or from other information in his possession, that the settlement has been erroneously or illegally made.

Under the facts of the instant case, it is clear that the penalties were correctly and legally settled against the company.

I am, therefore, of the opinion that the Board of Public Accounts is without authority to revise the settlements and remit the said penalties.

From C. P. Addams, Harrisburg, Pa.